UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HENRY PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-484 (TSC) |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Henry Perry filed this lawsuit against his former employer, the International Brotherhood of Teamsters (""IBT") challenging the denial of certain retirement benefits. Perry seeks relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Perry also seeks payment of earned but unused vacation time under the D.C. Wage Payment and Collection Law, D.C. Code Ann. §§ 32-101 *et seq.* ("DCWPCL").

Plaintiff filed a Complaint on March 21, 2014 against three defendants, including IBT. After Defendants filed a motion to dismiss, Plaintiff filed his First Amended Complaint on May 16, 2014,[1] naming IBT as the only defendant. IBT filed another motion to dismiss, on which the court heard argument on March 13, 2015. Statements at that hearing suggested that the case could be narrowed or resolved through discussion between the parties, and the court ordered such a discussion. (Minute Order, Mar. 13, 2015). The parties were unable to resolve the dispute, though Plaintiff reported that the discussions "clarified facts" such that he now sought a

---

[1] On May 17, 2014 Plaintiff filed a notice that Plaintiff's counsel had filed an incorrect draft of the First Amended Complaint and provided the correct document. (ECF No. 6). Defendant and the court treated the May 17, 2014 pleading as operative.

1

different remedy. (Pl. Status Report, ECF No. 17). Plaintiff sought leave to file a sur-reply addressing these clarified facts. (*Id.*). The court instead denied, without prejudice and subject to renewal, the then-pending motion to dismiss the First Amended Complaint and authorized the filing of a Second Amended Complaint. (Minute Order, Mar. 19, 2015). Defendant's renewed motion to dismiss the Second Amended Complaint is now before the court and, for the reasons discussed below, is GRANTED.

## I.     BACKGROUND

Perry became an IBT employee in 1995. (2d Am. Compl. ¶ 14). Until 2012, he received "all benefits available" from the Local Union 667 in Memphis, Tennessee, which also paid his wages. (*Id.* ¶¶ 15, 18). From 1998 to 2010 he held leadership positions in the local union, including serving as its President for 10 years. (*Id.* ¶ 17). In 2005 Perry was appointed by IBT's General President to serve the remainder of the term of an International Trustee, replacing a Trustee who had retired. (*Id.* ¶ 19). Perry held that position until his retirement on March 21, 2012. (*Id.* ¶ 39).[2]

In November 2011, Plaintiff applied for pension and retirement health benefits and was told by John Slatery, Director of Benefit Trust Administration, that he was ineligible for retirement health benefits because his time of service was short by six days. (*Id.* ¶¶ 40-41). Slatery directed Perry to discuss with IBT's Secretary-Treasurer the possibility of securing employment for six days to "bridge his time," (*id.* ¶¶ 42-45) a practice which Plaintiff alleges the IBT "consistently" permitted. (*Id.* ¶ 34). Plaintiff was assured he would be permitted to work

---

[2] Plaintiff alleges that he was "asked to step down from his position" by the General President James Hoffa, Jr., (2d Am. Compl. ¶ 37), but also alleges that he "unsuccessfully ran for office" in the summer of 2011 (*id.* at ¶ 38). Separately, he alleges that trustees of the union ran in 2006 for a term that ended in 2011. (2d Am. Compl. ¶ 23). The exact reason he departed effective March 21, 2012 is not clear from the Second Amended Complaint, though, importantly for purposes of this motion, there are no allegations that he either chose his departure date deliberately to ensure the receipt of retirement benefits or that he was forced to choose to retire early in order to ensure that he would not receive benefits.

for six additional days, but was later informed that his retiree health benefits application was denied. (*Id.* ¶¶ 42-44). Perry sent a letter "appealing the denial" on April 6, 2012 and requested an "explanation of the reason for the denial." (*Id.* ¶ 44). According to an August 1, 2012 letter sent by Perry to Slatery, Perry confirmed in a telephone conversation on April 9, 2012 that the intent of the April 6 letter was "to appeal the denial and receive a written explanation of why he was not eligible for retiree health benefits and why he was not being giving [sic] the opportunity to be bridged to age 65 for coverage." (*Id.* ¶¶ 45-46, 57). During this call, Slatery told Perry he would forward the appeal to the Health and Welfare Board of the IBT Benefit Trust. (*Id.* ¶ 47). On April 11, 2012 the IBT sent Plaintiff a letter informing Plaintiff that his application for retirement benefits had been denied. (*Id.* ¶ 49). The April 11 letter indicated "that Plaintiff could appeal to the Administrative Committee" but did not "contain the requisite ERISA documents or detail Plaintiff's rights as required under 29 C.F.R. § 2560.503-1(h)(2)(ii)."[3] (*Id.* ¶ 50-51). Although the letter did not include detailed information about the appeals process, it did refer to the Teamster Benefit Trust's *Guide to Your Benefits*, specifically to excerpts setting forth the length of service requirements for lifetime retirement coverage. (Def. Ex. 3).

Plaintiff sent a letter on August 1, 2012 to John Slatery confirming the April 9 telephone call and specifically "confirming that he was informed by [sic] Mr. Slatery was going to forward his appeal to the Administrative Committee." (*Id.* ¶ 57). Approximately one year later, on June 17, 2013, counsel for Perry requested "any and all documentation and policies and

---

[3] 29 U.S.C. § 1133 requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 C.F.R. § 2560.503-1(h)(2)(ii) requires appeal procedures to include the opportunity to "submit written comments, documents, records, and other information relating to the claim for benefits." The *plan* must, *on request*, provide certain materials to the claimant. *Id.* at (h)(2)(iii). The only request made, one year after the decision, was to IBT, the *employer*. (2d Am. Compl. ¶ 63).

determinations related to the award of bridge time to union members to enable them to qualify for retiree benefits" from the IBT and explicitly indicated that Perry was not filing an appeal. (*Id.* ¶ 63). In response, the IBT sent counsel for Perry copies of the April 6 and August 1 letters but did not send "any information reflecting the deliberations of Plaintiff's appeal request, or any documents reflecting the required ERISA information as set forth in the regulations governing claim administration under Section 503." (*Id.* ¶¶ 65-66).

The Second Amended Complaint asserts two counts. Count I seeks equitable relief and appears to point to two separate bases for that relief. (*Id.* ¶¶ 67-77). First, Plaintiff argues that IBT breached its obligations under ERISA to disclose certain plan documents and procedures, which interfered with his ability to seek review of the denial of his benefits. (*Id.* ¶¶ 70-72). Second, Plaintiff seeks reformation of the plan to make Plaintiff eligible for benefits if he served for at least as much time as any individual who received retirement benefits, regardless of whether that individual should have received them. (*Id.* ¶¶ 74-77). Count II raises claims under D.C. law related to payment of vacation time. (*Id.* ¶¶ 78-84).

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above

the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).[4]

In deciding a 12(b)(6) motion, a court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The court may also consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks and citations omitted); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("It is also clear that these documents – which were appended to Myers' motion to dismiss and whose authenticity is not disputed – may be considered here because they are referred to in the complaint and are integral to Kaempe's conversion claim.").

---

[4] IBT argues the court should dismiss the ERISA claim for failure to comply with Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim." IBT argues that the Second Amended Complaint fails to meet even the "liberal" standard under Rule 8 because it is "disjointed, incoherent, and confusing." (Def. Mot. at 13). While the Second Amended Complaint is indeed disjointed and confusing, and Plaintiff's opposition adds little in the way of clarity, it is not entirely indecipherable, and a ruling on the plausibility of the asserted claims is preferable.

### III.   ANALYSIS

#### A. Failure to Disclose Plan Documents

Plaintiff alleges violations of 29 U.S.C. §§ 1022(a), (b) and 1024(b)(1). The "administrator" of a plan "shall furnish to each participant…a copy of the summary plan description" within 90 days of that participant becoming a participant in the plan. 29 U.S.C. § 1024(b)(1)(A). The summary plan description must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* § 1022(a). The required contents of a summary plan description are set forth in 29 U.S.C. § 1022(b). Plaintiff claims that he never received "the governing documents in a timely manner." (2d Am. Compl. ¶ 71). He brings a claim under 29 U.S.C. § 1132(a)(3) for equitable relief to redress the failure to provide the required documents. (*Id.* ¶ 69).

The obligation to provide plan documents is an obligation of the plan *administrator,* who is "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The Health Plan here "is administered by the joint Board of Trustees for TBT [Teamsters Benefit Trust], which contracts with Lipman Insurance Administrators, Inc. for administrative services." (Def. Ex. 4 at 42). By the plain terms of ERISA, any claim for failure to comply with these disclosure requirements can be brought only against the administrator, not IBT.

Plaintiff also alleges IBT's failure to provide him with the requisite information about seeking review of the benefits determination. Again, this is an obligation of the plan, not the employer. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(h)(2). Plaintiff appears to argue that in this case, because IBT communicated with Plaintiff about the denial of his benefits, IBT held

6

itself out as a fiduciary with respect to the benefits determination and was therefore obliged to provide the determination information. Even if the court were to accept this argument, the Supreme Court's recent opinion on remedies under ERISA requires that Plaintiff show "harm and causation." *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1881 (2011).

Plaintiff has pointed to no harm arising from the failure to make the requisite disclosures. The closest Plaintiff comes to alleging harm is his allegation that failure to make full disclosure of his appeal rights prevented him from taking such an appeal. (2d Am. Compl. ¶¶ 72-76). This argument is flawed for at least two reasons. First, it is contrary to Plaintiff's other allegations that his correspondence and communications with IBT in April 2012 amounted to an appeal of the denial of benefits. (*See, e.g.*, 2d Am. Compl. ¶ 44-46). Second, during oral argument, IBT confirmed that "the appropriate body would hear" an appeal from Plaintiff if the court remanded for consideration by the plan; Plaintiff then declined the opportunity to make an appeal, citing futility. (Mot. Hr'g Tr. at 7, 26). Where Plaintiff either appealed through channels he contends were reasonable under the particular facts of this case or declined the opportunity to perfect an appeal, he cannot now be heard to allege harm from—at most—the delayed disclosure of information about the appeal procedure.

### B. Plan Reformation

The heart of Plaintiff's complaint is that IBT (and/or the TBT)[5] routinely "bridged" departing employees who would otherwise not qualify for retirement benefits by either retaining

---

[5] The parties dispute whether IBT is responsible for, or can be held liable under ERISA for, the denial of benefits at issue here. Plaintiff argues in the affirmative, relying on 1) the fact that the TBT communicated with Perry about his claim and 2) a statement in the TBT Guide to your Benefits which states that coverage begins when the "IBT submits the required contribution to the TBT Plan Administration Office on [the retiring employee's] behalf by the first of the month when retirement coverage begins." (Def. Ex. 4 at 2). Plaintiff reads this provision to mean that the TBT will not provide retirement coverage until the IBT makes a determination that the retiring employee is eligible for that coverage. Defendant disagrees. The court need not resolve this question, because even if Plaintiff is right that the denial of benefits was a fiduciary act by IBT covered by ERISA, Plaintiff is still not entitled to any equitable relief. *Varity Corp. v. Howe*, 516 U.S. 489 (1996), on which Plaintiff relies (Pl. Opp'n at 7), does hold

those individuals as employees for the requisite time, (2d Am. Compl. ¶¶ 34, 43), or by ignoring the time limitations entirely and simply approving the benefits claim. (*Id.* ¶¶ 35-36). Plaintiff's claim for equitable relief seeks reformation of the plan to deem Plaintiff eligible for benefits if he served IBT for at least as long as any employee who was "bridged." (2d Am. Compl. ¶¶ 76-77). The remedy of reformation, "used to prevent fraud," is a remedy available to an ERISA court. *Amara*, 131 S.Ct at 1879.

Reformation, however, is reserved "for those situations in which the moving party demonstrates that reformation is necessary to either correct a mistake or prevent fraud." *Morales v. Intelsat Global Serv.* LLC, 554 Fed. Appx. 4, 5 (D.C. Cir. 2014); *see also Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) ("In the law of trust, a court may reform a trust to the extent that it was procured by wrongful conduct, such as undue influence, duress, or fraud. . . . In the law of contract, a court may reform a contract when (1) one party seeks reformation, (2) that party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and (3) the party seeking reformation was justified in relying on the other party's misrepresentations.") (internal citations omitted); *Cross v. Bragg*, 329 F. App'x 443, 454 (4th Cir. 2009) (holding that reformation is appropriate upon a showing of clear and convincing evidence of a mutual mistake, or a unilateral mistake if it was "accompanied by fraud on the part of the other contracting party"). "Statements made by fiduciaries that are contrary to clear and express terms of the plan are an insufficient basis for reformation." *Bush v. Liberty Life Assurance Co. of Boston*, No. 14-cv-01507, 2015 WL 54418,

---

that an employer can, under certain factual circumstances, wear a fiduciary hat, but does not support Plaintiff's apparent argument that taking on a fiduciary role with regard to one decision transforms the employer into the administrator for purposes of all ERISA provisions. *See Varity Corp.*, 516 U.S. at 498.

at *7 (N.D. Cal. Jan. 2, 2015) (citing *Gabriel v. Alaska Elec. Pension Fund,* 773 F.3d 945, 955-56 (9th Cir. 2014)).

Estoppel is also available to hold a plan to its representations. *Amara*, 131 S.Ct at 1880. A showing of "detrimental reliance" must be made before an estoppel remedy can issue. *Id.* at 1881. The D.C. Circuit has not enunciated a test for the availability of estoppel under ERISA, but other circuits require, among other factors, detrimental reliance. *See, e.g.*, *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010); *Bratton v. Schlumberger Tech. Corp. Pension Plan*, 299 Fed. Appx. 375, 377 (5th Cir. 2008); *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007); *Bonovich v. Knights of Columbus*, 146 F.3d 57, 62 (2d Cir. 1998).

Importantly, Plaintiff alleges no reliance here. Plaintiff did not base his departure date on any representation that he would receive benefits despite his ineligibility. The only representations Plaintiff received about his eligibility for retirement benefits came *after* he knew the date of his retirement. (2d Am. Compl. ¶¶ 40-43). Plaintiff points to no mistake, mutual or otherwise, in the drafting or application of the eligibility rules.

Instead, Plaintiff alleges that IBT and/or the TBT have been flouting ERISA by ignoring the plain terms of the Plan, and he should share in the benefit of those violations. Plaintiff essentially argues that an ongoing practice by the IBT/TBT of bending or ignoring the eligibility rules amounted to an amendment of those rules, from which he ought to benefit. However, under ERISA, the plain terms of the plan control, *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300-01 (2009), and amendment may be accomplished only in accordance with the plan's amendment procedures. *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1293 (D.C. Cir. 2010); 29 U.S.C. § 1102. Perry has pointed to no case law suggesting that

reformation or estoppel are proper to accomplish what the law specifically prohibits. *Gabriel*, 773 F.3d at 956 ("a party cannot maintain a federal equitable estoppel claim in the ERISA context when recovery on the claim would contradict written plan provisions"). Accordingly, he has stated no claim for reformation and Count II must be dismissed.

### C. Vacation Pay Claims

The supplemental jurisdiction statute confers on the district courts, "in any civil action of which the district courts have original jurisdiction, . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The supplemental jurisdiction statute further provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. 1367(c)(3). Because the court dismisses all federal claims, it declines to exercise jurisdiction over Plaintiff's D.C. wage law claims, and dismisses Count II.[6]

### IV. CONCLUSION

Plaintiff has failed to allege circumstances justifying equitable relief, and has failed to point to cognizable harm he suffered from the purported failure to comply with ERISA's disclosure requirements. Accordingly, he states no claim under ERISA and Count I must be dismissed. Count II will be dismissed because there is no independent basis for the court to exercise jurisdiction over that claim.

A corresponding order will issue separately.

Dated: July 15, 2015

---

[6] During oral argument Plaintiff confirmed there is no alternative basis of jurisdiction for Count II.